IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CHARLES SMALLWOOD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-20-85-STE |
| | ) |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**I.    PROCEDURAL BACKGROUND**

On September 16, 2011, Mr. Smallwood applied for disability insurance benefits and supplemental security income, alleging a disability beginning September 1, 2010. (TR. 285-297). Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision on June 25, 2013. (TR. 148-160). The Appeals Council remanded

the case and the ALJ issued a second unfavorable decision on September 8, 2014. (TR. 1402-1420). On April 29, 2016, the Appeals Council denied Plaintiff's request for review of the second administrative decision. (TR. 1-3). Mr. Smallwood appealed the denial of benefits in federal court, by means of filing a Complaint in the Eastern District of Oklahoma on August 4, 2016—Case No. 16-CV-289-JHP. (TR. 1378-1380). In that case, the Court granted the Commissioner's unopposed motion for remand and the case was remanded on January 30, 2017. (TR. 1384-1389).

Following another administrative hearing, an ALJ issued a third unfavorable decision on June 20, 2018. (TR. 1292-1317). The Appeals Council denied Plaintiff's request for review of that decision, making it the final decision of the Commissioner. (TR. 1280-1283).

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during a closed period from September 1, 2010 through December 31, 2014. (TR. 1295-1298, 1314-1315).

At step two, the ALJ determined Mr. Smallwood had several severe impairments, discussed in detail below. *See* TR. 1298; *see infra*. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 1299).

At step four, the ALJ concluded that Mr. Smallwood retained the residual functional capacity (RFC) to:

> [P]erform "light" work as defined in 20 CFR 404.1567(b) and 416.967(b) with occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping or kneeling; no crouching or crawling; and frequent reaching, handling, and fingering. He must avoid concentrated exposure to unprotected heights and unprotected moving mechanical parts. He can perform simple, routine tasks. He can tolerate occasional interaction with supervisors and co-workers, and incidental contact with the general public in performing work tasks. He can respond appropriately to changes in a routine work setting. Time off-task can be accommodated by normal work breaks.

(TR. 1303).

With this RFC, the ALJ concluded that Plaintiff could not perform his past relevant work. (TR. 1315). Thus, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 1374). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 1374). At step five, the ALJ adopted the VE's testimony and concluded that Mr. Smallwood was not disabled based on his ability to perform the identified jobs. (TR. 1316-1317).

### III.  ISSUES PRESENTED

On appeal, Plaintiff alleges error: (1) at step two; (2) in the ALJ's evaluation of medical evidence; and (3) in the ALJ's consideration of evidence during a closed period of disability. (ECF Nos. 23 & 29). The Court finds: (1) any error at step two to be harmless and (2) error in the ALJ's evaluation of certain medical evidence. In light of the error noted, remand is necessary. On remand, the ALJ shall re-evaluate the medical

3

evidence and, if necessary, further consider the evidence related to Plaintiff's claim concerning the closed period of disability, pursuant to the instructions below.

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.   STEP TWO

The Court finds any error at step two is harmless.

At step two, in bolded typeface, the ALJ stated:

**The claimant has the following severe impairments: diabetes mellitus type II; chondromalacia of the right patella (with effusion and grating), and septic arthritis of the right knee with synovitis, status post synovectomy times, with irrigation and**

4

> **debridement, and right knee removal of deep implant; bipolar disorder; panic disorder with agoraphobia; generalized anxiety disorder; social phobia; personality disorder; PTSD.**

(TR. 1298) (citation omitted). The following narrative appeared subsequent to this finding, in non-bolded typeface:

> The Claimant alleges disability due to obesity, diabetes mellitus, tinnitus and hearing loss, hypertension, obstructive sleep apnea, shoulder impairment, degenerative joint disease of the knees, right leg impairment, back impairment, metabolic syndrome, bipolar disorder, PTSD, panic disorder with agoraphobia, generalized anxiety disorder, personality disorder, and social phobia. The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28 and are therefore severe.
>
> After carefully considering the medical evidence of record in its entirety, I find that the claimant has the additional medically determinable impairments of obesity, hypertension, obstructive sleep apnea, tinnitus and hearing loss, hepatic steatosis, status post ruptured back cyst, asthma, bilateral shoulder strain/sprain, and right elbow lateral epicondylitis. These include impairments which may have caused more than minimal limitation in the short-term, but responded well to treatment, with improved symptomatology, and therefore failed to meet the durational requirement of causing more than minimal limitation for at least 12 months to be considered severe; chronic impairments for which the claimant has received only routine, conservative care, and the findings and/or symptoms related to which do not indicate more than minimal limitation; and impairments that were diagnosed and/or treated prior to the alleged disability onset date, the residual effects of which do not cause more than minimal limitation. Accordingly, I find that these impairments, considered singly and in combination, do not significantly limit the ability to perform basic work activities and are therefore nonsevere.

(TR. 1298) (citations omitted).

According to Plaintiff, the ALJ erred by finding the impairments of obesity, tinnitus and hearing loss, hypertension, and obstructive sleep apnea both severe and non-severe. (ECF No. 23:5-6; 29:2-4). Plaintiff characterizes the error as a

"monumental failure at step two," preventing argument "against the step two findings when they are clearly contradictory." (ECF No. 23:5). In addition, Mr. Smallwood alleges that the ALJ erred by finding Plaintiff's metabolic syndrome severe, "then fail[ing] to discuss how that syndrome affects his ability to perform the jobs he later relied on at step five[.]" (ECF No. 23:5). According to Plaintiff, the "faulty" evaluations at step two impacted the entire disability determination. *See* ECF No. 23:5 ("It is beyond all doubt that all of a claimant's impairments must be considered throughout the full sequential disability process."); *see also* ECF No. 29:4 ("The effects of *all* impairments should be considered *throughout* the disability determination, and failure to consider all of Claimant's impairments is reversible error.") (emphasis in original).

The Court recognizes the obvious discrepancy in the ALJ's step two findings. Although the bold-faced finding did not recognize the obesity, tinnitus and hearing loss, hypertension, and obstructive sleep apnea as "severe" impairments, a finding of severity was reached in the first paragraph of the subsequent narrative with a contradictory finding in the second paragraph. *See supra*. Despite the discrepancy, however, it is apparent that the ALJ considered the effects of all of Plaintiff's impairments, severe or not, and including the metabolic syndrome, when assessing the RFC. *See* TR. 1303-1304 (reciting RFC and stating: "In making this finding, I have considered the entire medical record even when not explicitly discussed"); TR. 1313 ("I have considered all of the claimant's impairments, both severe and nonsevere, in reaching the residual function capacity established herein.").

6

"Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at [his] word." *Wall v. Astrue,* 561 F.3d 1048, 1070 (10th Cir. 2009) (internal quotation marks omitted; alterations in original). Because the ALJ considered all of the impairments in assessing the RFC, there exists no resulting error in the hypothetical to the VE on which the step five findings were based. *See Orso v. Colvin*, 658 F. App'x 418, 420–21 (10th Cir. 2016) (no error in hypothetical which contained limitations from the RFC, which the Court had "already concluded was not erroneous."). Thus, the Court concludes that any error at step two was harmless, because the discrepancy in the written findings at that step did not improperly affect the ALJ's analysis at the subsequent steps of the disability determination. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (harmless error appropriate when, based on material the ALJ did at least consider (just not properly), the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").

## VI.  THE ALJ'S EVALUATION OF THE EVIDENCE

Plaintiff alleges legal error in the ALJ's evaluation of certain medical opinions and a lack of substantial evidence to support the ALJ's decision as a whole. *See* ECF Nos. 23: 6-12, 29:4-6. The medical opinions challenged are:

1. The November 14, 2012 Mental Residual Functional Capacity Assessment from Dr. Paula Kresser;

2. The August 8, 2014 letter from psychiatrist, Dr. Theresa Farrow, which stated that Plaintiff was "unable to work;" and

3. The opinion from medical expert, Dr. John Hickman, regarding Plaintiff's mental impairments from September 1, 2010 through December 31, 2014.

The Court finds legal error in the ALJ's evaluation of the evidence from Dr. Hickman, warranting remand, which prevents a finding on Plaintiff's challenge to the sufficiency of the evidence as a whole.

### A. The Opinions

On November 14, 2012, State Agency psychologist Dr. Kresser reviewed Plaintiff's evidentiary file and completed a "Mental Residual Functional Capacity Assessment" form. (TR. 604-606). According to Dr. Kresser, Plaintiff was "markedly limited" in his abilities to:

- interact appropriately with the general public;

- accept instructions and respond appropriately to criticism from supervisors;

- get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and

- respond appropriately to changes in the work setting.

(TR. 605). In a narrative which accompanied the MRFC form, Dr. Kresser explained that when Plaintiff presented to Carl Albert for treatment in June 2010, "medication was partially effective but not enough." (TR. 591). Dr. Kresser also stated:

> Evidence indicates marked limitations in interaction with others and social judgment as early as alleged onset date with decreased lack of concentration and attention and anxiety, Claimant does not seem to be

> able to function outside of the home and then only if watching TV, playing video games, or reading.
>
> Evidence indicates partial response to medication with significant residuals. Evidence indicates expedited MRFC with marked limitations in dealing with co-workers, public, and supervisors and marked limitations in ability to adapt to change. Adverse onset inferred to June 2011.

(TR. 592).[1]

The administrative record also contains evidence of Plaintiff's treatment at the Carl Albert Community Health Center for various periods on and off from June 2012-January 2018. (TR. 564-590, 607-631, 903-913, 1259-1268, 1278-1279, 1754-1781, 1826-1869, 1996-2005). Dr. Farrow was one of numerous practitioners to treat Plaintiff at Carl Albert, and the record includes her treatment notes dated June 14, 2012, August 8, 2012, September 4, 2012, November 28, 2012, February 26, 2013, August 28, 2013, September 19, 2013, and March 26, 2015. (TR. 565, 572, 583-584, 613-616, 629-631, 904-909, 1850-1852). The record also contains a letter from Dr. Farrow dated August 8, 2014, stating that she had treated Mr. Smallwood for various diagnoses and he was "unable to work at th[at] time." (TR. 1279).

Finally, the record contains a "Medical Interrogatory—Mental Impairment(s)—Adult" form to assess Plaintiff's mental impairment(s) which had been completed by Dr. Hickman, a medical expert who had been contacted by the ALJ to review Mr. Smallwood's file, prior to the third administrative hearing. (TR. 2006-2011). Dr.

---

[1] Dr. Kresser also completed a "Psychiatric Review Technique" form, but this form is not considered a "medical opinion." See *Whelchel v. Barnhart*, 94 F. App'x 703, 707, 2004 WL 613925, at *3 (10th Cir. 2004) (noting that a PRT form "was not a medical opinion").

9

Hickman's opinion was two-fold. First, Dr. Hickman stated that Mr. Smallwood met and/or equaled three "listed" mental impairments—Listings 12.05, 12.06, and 12.15 which began September 1, 2010 and lasted through December 31, 2014. (TR. 2007, 2009).[2] In support of this finding, Dr. Hickman found that Mr. Smallwood's mental impairment was "serious and persistent," meaning:

> there is a medically documented history of the existence of the disorder over a period of at least two years and there is evidence of both medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder, AND marginal adjustment, meaning that the claimant has minimal capacity to adapt to changes in his/her environment or to demands that are not already part of his/her daily life.

(TR. 2010).

Second, Dr. Hickman rated Plaintiff's mental impairments in four mental domains, finding that Plaintiff suffered "moderate" limitations in his ability to "understand, remember, or apply information;" and "marked" limitations in his abilities to: (1) interact with others, (2) concentrate, persist, and maintain pace, and (3) adapt or manage himself. (TR. 2008).

---

[2] At step three, the ALJ must determine whether the claimant's impairment is "equivalent to one of a number of listed impairments that the Secretary acknowledged as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). If this standard is met, the claimant is considered *per se* disabled. *Knipe v. Heckler*, 755 F.2d 141, 146 (10th Cir. 1985). The question of whether a claimant meets or equals a listed impairment is strictly a medical determination. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

### B.     The ALJ's Evaluation of the Opinions

The ALJ acknowledged the challenged opinions, but accorded them little weight. (TR. 1309, 1312). In doing so, the ALJ began by acknowledging Dr. Kresser's MRFC form and accompanying narrative, noting specifically the areas in which Dr. Kresser had found Plaintiff "markedly" limited. (TR. 1308-1309). The ALJ then stated: "I acknowledge that there are other mental opinions in the file that opine a similar degree of mental limitations as that Dr. Kresser opined." (TR. 1309). The ALJ then referenced: (1) Dr. Farrow's August 8, 2014 opinion that Mr. Smallwood was "unable to work" at that time and (2) various Global Assessment of Functioning scores (GAF scores) which Dr. Farrow had assessed in 2012, 2013 and 2015. (TR. 1309). Finally, the ALJ recognized the portion of Dr. Hickman's opinion which rated Plaintiff's impairments in the four mental domains. (TR. 1309).

After acknowledging certain portions of the challenged opinions, the ALJ began his evaluation by discounting Dr. Hickman's opinion, stating:

> Though he is a specialist in the field of psychology who is familiar with Social Security policy and regulations, I give little weight to his opinion, because it is neither consistent with nor supported by the longitudinal mental health treating notes. He listed only evidentiary citations in support of the degree or limitation he opines, including a citation to Dr. Kresser's narrative, but provided no explanation or discussion.

(TR. 1309) (internal citations omitted).

The ALJ next discounted Dr. Farrow's opinions, relying on the fact that they had been based on findings "before [Mr. Smallwood] was stabilized." (TR. 1309). At this point, the ALJ stated:

11

> However, as discussed in the following paragraphs, the longitudinal medical evidence of record indicates that when the claimant adheres to his mental health regimen as prescribed, he reports that his mental symptoms are greatly improved, if not completely resolved, with exacerbations due almost solely to familiar stressors, sometimes in combination with lapses in medication. As such, I find that the opinions of Drs. Kresser, Farrow, and Hickman, though generally consistent with each other, are lacking in consistency with the longitudinal medical evidence of record and are therefore entitled to little weight. The treatment notes indicate the claimant has sought treatment for exacerbated symptoms. However, per his own report and provider assessment, these exacerbated symptoms respond well to treatment, and, thus, his presentation and related mental status findings during these episodes of exacerbation are not representative of his mental functioning durationally.

(TR. 1309-1310). The ALJ then "beg[an] with Dr. Kresser's narrative discussion," noting that the doctor had access to Carl Albert treating notes only through September 5, 2012 and that she had noted "Partial effectiveness of medication and ongoing medication adjustment." (TR. 1310). The ALJ then discussed, in detail, Plaintiff's mental health treatment at Carl Albert and various hospitals through 2017. *See* TR. 1310-1312. The ALJ concluded by stating:

> As such, the opinions of Drs. Kresser, Farrow, and Hickman, however apparently consistent with each other, cannot be given great weight, as they are neither consistent with nor supported by the Carl Albert treating notes, including the mental status examination findings, provider assessments, and the claimant' statements, including response to treatment and his activities.

(TR. 1312).

### C.     Error in the ALJ's Evaluation of the Medical Evidence

Mr. Smallwood alleges error in the ALJ's evaluation of the evidence. According to Plaintiff: (1) the ALJ committed legal error in the evaluation of opinions from Drs. Kresser, Farrow, and Hickman, and (2) substantial evidence does not exist to support

12

the ALJ's decision when examining the record as a whole. (ECF No. 23:6-12; 29:4-6). The Court finds legal error in the consideration of opinion from Dr. Hickman which warrants remand. *See infra*. Absent findings on Dr. Hickman's opinion, the Court cannot determine whether the ALJ's decision is supported by substantial evidence. *Larkins ex rel. M.D. v. Colvin*, 568 F. App'x 646, 649 (10th Cir. 2014).

### 1. The ALJ's Duty to Evaluate Medical Opinions

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. §§ 404.1527(c) & 416.927(c). The weight given each opinion will vary according to the relationship between the claimant and medical professional. *Hamlin*, 365 F.3d at 1215. For example, in evaluating a treating physician's opinion, the ALJ must follow a two-pronged analysis. First, the ALJ must determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). This analysis, in turn, consists of two phases. First, an ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at 2 (July 2, 1996) (SSR 96-2p) (internal quotations omitted).

If controlling weight is declined, the ALJ must assess the opinion under a series of factors which are considered when assessing *any* medical opinion, regardless of its source. These factors include: (1) the length of the treatment relationship and the

13

frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R §§ 404.1527 & 416.927.[3]

Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 96-2p, at *5. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted). In addition, "opinions from any medical source on issues reserved to the Commissioner must never be ignored." SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996).

---

[3] Mr. Smallwood's applications for benefits were filed in 2011. *See supra*. As a result, the ALJ's review of medical opinions in Mr. Smallwood's case is governed by 20 C.F.R. §§ 404.1527 & 416.927. For claims filed after March 27, 2017, the Commissioner is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a) & 416.920c(a). Instead, the ALJ need only articulate how persuasive he finds the medical opinion. *See* 20 C.F.R. §§ 404.1520c(b) & 416.920c(b).

### 2. Dr. Kresser's Opinion

Mr. Smallwood alleges that the ALJ "impermissibly ignored or minimized" Dr. Kresser's findings. (ECF No. 23:10). The Court disagrees. As stated, Dr. Kresser was a State Agency psychologist who reviewed Plaintiff's case file and rendered an opinion in November 2012. *See* TR. 591-592, 604-606. The ALJ acknowledged Dr. Kresser's opinion, but discounted it because it was based on a limited review of the entirety of the record—specifically only evidence from Carl Albert through September 5, 2012. *See* TR. 1308-1309; TR. 591. After discounting the opinion, the ALJ discussed evidence from Carl Albert and other mental health providers ranging in time from June 2012 through January 31, 2018 and ultimately concluded that Dr. Kresser's opinion was "neither consistent with, nor supported by the Carl Albert treating notes, including the mental status examination findings, providers assessments, and the claimant's statements, including responses to treatment and his activities." (TR. 1312). Thus, the Court concludes the ALJ: (1) did not "impermissibly ignore[] or minimize[]" Dr. Kresser's opinions and (2) the ALJ properly relied on inconsistency and a lack of support in the record as bases to reject the opinions. *See supra*.

### 3. Dr. Farrow's Opinion

The opinion from Dr. Farrow at issue is the August 8, 2014 letter stating that Plaintiff was "unable to work at th[at] time." (TR. 1279). As discussed, the ALJ discounted the opinion, relying on the fact that it had been based on findings "before [Mr. Smallwood] was stabilized." (TR. 1309). Plaintiff disagrees with the ALJ's treatment of the opinion, arguing that the opinion is supported by Dr. Farrow's own

15

notes, treatment notes from other practitioners at Carl Albert, and Dr. Kresser's opinion. (ECF No. 23:8).

Dr. Farrow's opinion that Plaintiff was unable to work involved an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1) (stating that an opinion that the claimant was "unable to work" is reserved to the Commissioner; *see also* SSR 96–5p at *2 (stating that the issue involving the existence of a "disability," under the Social Security Act, is reserved to the Commissioner). As such, the ALJ could not ignore the opinion, but instead had a duty to evaluate it. *See Lackey v. Barnhart*, 127 F. App'x 455, 457-58 ("the ALJ must evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") (internal quotation marks omitted); SSR 96-5p, at *3 (July 2, 1996) ("opinions from any medical source on issues reserved to the Commissioner must never be ignored.").

Here, the ALJ did not ignore Dr. Farrow's opinion, rather he discounted it because it had been based on a mere snapshot of Plaintiff's mental health. *See* TR. 1309. That was all the ALJ was required to do. *See supra*. Plaintiff's argument otherwise—i.e.—that Dr. Farrow's opinion was supported by other evidence—is an improper attempt to re-weigh the evidence, which this Court cannot do. *See Vigil*, 805 F.3d at 1201 (noting that the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency") (internal quotation marks omitted). The Court finds no error in the ALJ's evaluation of Dr. Farrow's opinion.

### 4. Dr. Hickman's Opinion

Dr. Hickman completed a "Medical Interrogatory—Mental Impairment(s)—Adult" form and found that:

- beginning September 1, 2010, Mr. Smallwood met and/or equaled three "listed" mental impairments—Listings 12.05, 12.06, and 12.15;

- the impairments were "serious and persistent;" and

- Plaintiff suffered "moderate" limitations in his ability to "understand, remember, or apply information;" and "marked" limitations in his abilities to: (1) interact with others, (2) concentrate, persist, and maintain pace, and (3) adapt or manage himself.

(TR. 2007-2010).

According to Mr. Smallwood, the ALJ ignored Dr. Hickman's findings that Plaintiff's mental impairments were "serious and persistent." *See* ECF No. 23:11 ("The ALJ ignored [evidence of] Claimant's ability to function outside of … highly structured settings [as noted by Dr. Hickman in support of his opinion]."). Plaintiff is correct.

Dr. Hickman had concluded that Plaintiff's mental impairments were "serious and persistent" in support of his larger finding that Mr. Smallwood had met and/or equaled Listings 12.05, 12.06, and 12.15. (TR. 2010). However, in evaluating Dr. Hickman's opinion, the ALJ completely ignored these aspects of Dr. Hickman's opinion, instead noting only the portion of the opinion regarding Plaintiff's "moderate" and "marked" limitations. *See* TR. 1309. The ALJ's blatant disregard directly contradicts the ALJ's duty to "evaluate every medical opinion" in the record. *See* 20 C.F.R. §§ 404.1527(c) & 416.927(c).

In defense of the ALJ's treatment of Dr. Hickman's opinion, the Commissioner states: "the ALJ observed that [Dr. Hickman] provided no explanation for his opinion than to cite to exhibit numbers." (ECF No. 27:11). The ALJ did cite this rationale when discounting a portion of Dr. Hickman's opinion. *See* TR. 1309. But the rationale is not legitimate in light of the form's instructions to cite the "exhibit and page number" of the medical evidence that supported the opinion; which is precisely what Dr. Hickman did. *See* TR. 2007-2009. Furthermore, Defendant is silent regarding the fact that the ALJ completely ignored findings that Plaintiff had met and/or equaled three "Listings." *See* ECF No. 27. Defendant's argument is not persuasive and the Court concludes that the ALJ erred in his treatment of Dr. Hickman's opinions.

In addition to the legal error, Mr. Smallwood also alleges that the decision lacks substantial evidence overall. *See* ECF Nos. 23 & 29. But in light of the legal error regarding the ALJ's treatment of Dr. Hickman's opinion, the Court cannot evaluate Mr. Smallwood's claim that the decision lacked substantial evidence. *See Moses v. Berryhill*, 2019 WL 167421, at *3 (W.D. Okla. Jan. 10, 2019) (noting that reversal on a legal error "obviate[es] the need to discuss whether the decision had been otherwise supported by substantial evidence.").

## VII.  REMAND INSTRUCTIONS

On remand, the ALJ shall, at step three, specifically discuss Dr. Hickman's opinions that Plaintiff met and/or equaled Listings 12.05, 12.06, and 12.15. If a question exists regarding the evidentiary support for Dr. Hickman's opinion, because it was recorded by reference to "exhibit and page number" per the form's instructions,

the ALJ shall seek clarification from Dr. Hickman himself. If after consideration of Dr. Hickman's opinion at step three, the case proceeds to the remaining steps of the sequential evaluation, the ALJ shall consider the impact of Dr. Hickman's opinion on the RFC and make specific findings in relation thereto.

### VIII. PLAINTIFF'S REMAINING ALLEGATION OF ERROR

In a third allegation of error, Mr. Smallwood alleges that the ALJ erred in failing to find a disability for the closed period of June 1, 2011, through December 31, 2014 in light of evidence that Plaintiff had been hospitalized for 51 days and had visited the emergency room an additional number of times during that period. (ECF No. 23:13). According to Mr. Smallwood: (1) the evidence of hospitalizations and emergency room visits is inconsistent with testimony from three vocational experts who testified that "frequent unscheduled work breaks and work absences… would preclude all competitive work" and (2) the ALJ failed to investigate and clarify the inconsistency. (ECF No. 23:13).

In light of the ordered remand, the Court concludes that any findings on this issue would be premature. For example, a conclusive finding at step three based on Dr. Hickman's opinion would end any further discussion on the issue. However, if the case proceeds past step three, the ALJ shall consider whether Plaintiff's hospitalizations and emergency room visits had impacted his ability to work. But at this juncture, the Court makes no finding on the issue and declines consideration of the same. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) ("We will not reach the

remaining issues raised by claimant because they may be affected by the ALJ's resolution of this case on remand.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision. On remand, the ALJ shall properly assess the opinion of Dr. Hickman in accordance with the findings above.

ENTERED on February 26, 2021.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE